

**FILED**
MAR 2 8 2006
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DAKOTA, MINNESOTA & EASTERN RAILROAD CORP., | * * * | CIV. 02-4083 |
| Plaintiff, | * | MEMORANDUM OPINION |
| -vs- | * * | AND ORDER |
| MICHAEL ROUNDS, in his official capacity as Governor of the State of South Dakota; and the TRANSPORTATION COMMISSION of the SOUTH DAKOTA DEPARTMENT OF TRANSPORTATION, an executive agency of the State of South Dakota, | * * * * * * * * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

After this Court issued enjoined the State of South Dakota from enforcing S.D.C.L. §§ 49-16A-75.3(1),(2),(4) & (5) and enjoined the State of South Dakota from enforcing S.D. Admin. R. 70:08:01:03 and 70:08:01:04, Plaintiff and Defendants both appealed to the Eighth Circuit Court of Appeals. The Eighth Circuit vacated the injunction with regard to S.D.C.L. § 49-16A-75.3(5) because of uncertainty as to this Court's subject mater jurisdiction, modified the injunction to restrain only the Governor of the State of South Dakota, and otherwise affirmed this Court's order. 362 F.3d 512 (8th Cir.2004).

The Eighth Circuit expressed doubt that the Takings Clause claim involving S.D.C.L. § 49-16A-75.3(5) was ripe for adjudication. Given the complexity of the ripeness issue and the fact that the issue had not been addressed by the parties on appeal, the Eighth Circuit remanded this aspect of the case to this Court for whatever further proceedings this Court should deem appropriate. 362 F.3d at 521. This Court ordered briefing on the issues of ripeness and this Court's subject matter jurisdiction as it pertains to the Takings Clause claim involving S.D.C.L. § 49-16A-75.3(5). This Court further directed the parties to submit any materials they may deem relevant in support of their positions on the ripeness issue, and to advise the Court as to their positions regarding the need for an evidentiary hearing. The parties requested and received a continuation of the briefing schedule

to allow them to have the issues involved in the remand resolved by legislative action in the 2005 Legislative Session of the South Dakota Legislature. After being unable to resolve the issues by legislative action in the 2005 Legislative Session the final briefs on the ripeness and Takings Clause issues were submitted. Neither of the parties submitted additional materials or requested an evidentiary hearing.

The parties recently submitted a Joint Notice as to Amendment of S.D.C.L. § 49-16A-75.3(5). Doc. 122. Attached to this notice is a copy of Senate Bill 157, which was passed by both houses in the 2006 South Dakota Legislative Session and signed into law by Governor Rounds on March 7, 2006. Senate Bill 157 amends S.D.C.L. § 49-16A-75.3(5) to provide that electric utilities, public utilities, gas utilities, municipal utilities, municipal power agencies, joint action agencies, consumers power districts, pipeline companies, telecommunication companies, and rural water systems have the right to "cross over or under the railroad right-of-way for the placement of facilities, upon payment of a reasonable fee, subject to reasonable regulation and negotiation in good faith as to location, placement, and compensation, when the placement of facilities is outside the public right-of way." The parties acknowledge that in the absence of a referendum or challenge in the court system, and upon taking effect on July 1, 2006, the amendment of S.D.C.L. § 49-16A-75.3(5) will render the case at hand moot.

S.D.C.L. § 49-16A-75.3(5) currently provides that a "railroad's exercise of the right of eminent domain is a public use consistent with public necessity only if" the exercise of that right "[p]rovides that electric utilities, public utilities, telecommunication companies, and rural water systems have the right to the use of the right-of-way for the placement of underground facilities, without fee, subject to reasonable regulation as to location and placement." The Eighth Circuit explained as follows its concern that S.D.C.L. § 49-16A-75.3(5) may not mandate a taking of railroad property:

> First, we are not certain that the statute mandates a taking of railroad property. Subsection (5) provides that other entities must "have the right to the use of the right-of-way ... without fee." No doubt that entails the grant of easements of some value, but who will grant the easements and who will pay for them? If the railroad exercising eminent domain need not pay the landowner for the value of the future easements because the railroad is acquiring something less than a fee simple absolute property interest, then the withheld easements are

2

>never "taken" from the railroad. Someone else - the State, the selling landowner, or the easement beneficiaries - will pay some value for them. Second, if the railroad exercising eminent domain must pay the landowner full value for the property, and then grant free easements to the entities named in subsection (5), the end result appears to be a permanent physical taking of a property interest. But the district court did not address whether the railroad would have a right to recover just compensation under the South Dakota eminent domain laws.

362 F.3d at 520-521.

In response to the above concern, DM&E correctly contends that the railroads in exercising their right of eminent domain will be required to pay fair market value without any discount for the potential future easements granted to any electric utilities, public utilities, telecommunication companies, and rural water systems. This contention is based upon case law establishing that a landowner whose property is taken for public use, or damaged, is entitled to compensation to be determined at the time of the taking, the damaging or the substantial interference with the landowner's rights. *See City of Brookings v. Mills*, 412 N.W.2d 497, 499 (S.D. 1987). Fair market value is the proper measure of compensation where land is taken permanently, and fair market value does not mean speculative or remote value. *See State Highway Comm'n v. American Memorial Parks, Inc.*, 82 S.D. 231, 245, 144 N.W.2d 25, 32 (1966). The Railroad further argues that there can be no discount for the potential future easements in the absence of new contrary state law allowing railroads to pay less than full value for property taken and that this new law, if it existed, would have to set market value for future easement potential in advance, and require the market value for future easement potential to be deducted from compensation paid by the railroads to the landowners. Defendants do not dispute the established measure of just compensation set forth in the cases cited to by DM&E, and Defendants do not contend there is any low or mechanism in place in South Dakota that allows railroad to pay less than full value for property taken and that sets market value for future easement potential in advance of establishing just compensation. The Railroad will pay full value for the property at the time of taking. Even if one of the entities enjoying the free use of an easement does not permanently use the easement, but at some time abandons that use, that is still a taking without compensation from the railroad. *See SDDS, Inc. v. State*, 650 N.W.2d 1 (S.D. 2002)(damages awarded for temporary taking); *Mills*, 412 N.W.2d at 501 (loss of use constitutes de

facto taking).

The Eighth Circuit, in remanding this case on the issue of ripeness, requested consideration of and analysis of the holding in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), and its progeny. 362 F.3d at 520-521. In *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, the United States Supreme Court developed a two-part test which requires that a taking claim will not be considered ripe for judicial review unless a claimant (1) has requested from the applicable agency a final decision regarding the application of the challenged regulations to the property, and (2) the claimant has similarly sought monetary compensation through the procedures provided by the state. 473 U.S. at 186 and 195. If a claim is unripe, federal courts lack subject matter jurisdiction and the claim must be dismissed. However, the Supreme Court in *Williamson* conditioned the state procedures requirement upon both the availability and adequacy of the state's process. The Court explained, "If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause [in the federal courts] until it has used the procedure and been denied just compensation." 473 U.S. at 195. *See also McKenzie v. City of White Hall*, 112 F.3d 313 (8th Cir. 1997).

In *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725 (1997), the Supreme Court again considered whether a claim was ripe for adjudication in the context of a landowner's action for compensation under 42 U.S.C. § 1983. The landowner alleged that a regional planning agency committed an unconstitutional regulatory taking when it determined that a residential lot was ineligible for development. In *Suitum*, the Supreme Court discussed as follows *Williamson County*'s ripeness requirements in the context of local zoning decisions:

> Leaving aside the question of how definitive a local zoning decision must be to satisfy *Williamson County*'s demand for finality, two points about the requirement are clear: it applies to decisions about how a takings plaintiff's own land may be used, and it responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer. As the Court said in *MacDonald* [*Sommer & Frates v. Yolo County*, 477 U.S. 340, 350 (1986)], "local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other."

520 U.S. at 738.

4

In the *Suitum* case, however, it was undisputed that the relevant agency had finally determined that the landowner's land was entirely within a zone in which development was not permitted. Accordingly, the Supreme Court concluded, "Because the agency has no discretion to exercise over Suitum's right to use her land, no occasion exists for applying *Williamson County*'s requirement that a landowner take steps to obtain a final decision about the use that will be permitted on a particular parcel." *Suitum*, 520 U.S. at 739.

In *Palazzolo v. Rhode Island*, an inverse condemnation case, the United States Supreme Court reversed the Rhode Island Supreme Court's holding that the landowner's claim was not ripe for adjudication. 533 U.S. 606 (2001). In the *Palazzola* case, the Supreme Court reasoned that although a landowner must give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened. The Supreme Court further opined that "federal ripeness rules do not require the submission of further and futile applications with other agencies." 533 U.S. at 626.

Some lower court have also applied or at least acknowledged a futility or inadequacy exception to the ripeness rule set forth in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). *See Daniels v. Area Plan Comm'n*, 306 F.3d 445 (7th Cir. 2002)(Indiana's inverse condemnation procedure, while available, was inadequate because the manner in which the property was taken left the owners without a definable pecuniary loss, thereby placing case within futility exception to ripeness requirement of exhaustion of state judicial remedies.); *Rolf v. City of San Antonio*, 77 F.3d 823, 826 (5th Cir. 1996)(Court acknowledges state's procedures are inadequate when they "almost certainly will not justly compensate the claimant."); *Wisconsin Cent. Ltd. v. Public Service Comm'n of Wisconsin*, 95 F.3d 1359, 1368 (7th Cir. 1996)(although Wisconsin provided procedure by which railroads could receive compensation when utilities placed transmission facilities in or across railroad right-of-ways, court recognizes that "Williamson County requires exhaustion only if the state has provided 'an adequate process for obtaining compensation.'"); *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 463 (7th

Cir. 1988)(Court acknowledges suit is ripe if it is apparent that "state does not intend to pay compensation"); *Munoz Arill v. Maiz*, 992 F.Supp. 112, 121 (D.Puerto Rico 1998)(court denies motion to dismiss § 1983 action on ripeness grounds where the court could infer from the complaint that the Commonwealth's remedy for a taking was inadequate). DM&E maintains that this case is ripe for adjudication under the futility exception.[1]

Defendants contend that the matter is not ripe for adjudication because DM&E has not exhausted available remedies available in South Dakota state courts to obtain compensation for any taking of property pursuant to S.D.C.L. § 49-16A-75.3(5). Defendants first contend that S.D.C.L. Ch. 21-35, which addresses condemnation under the power of eminent domain, is available to determine appropriate compensation if any utility exercises its statutory eminent domain authority. Defendants then point out that the South Dakota courts recognize the availability of inverse condemnation when property is taken but just compensation is not provided. Defendants' brief at p. 2, Doc. 119 (citing *Wolff v. Secretary of South Dakota Game Fish and Parks Dep't*, 544 N.W.2d 531, 535 (S.D. 1996); *Knodel v. Kassel Township*, 581 N.W.2d 504, 506 (S.D. 1998)). Defendants also contend that the South Dakota courts recognize their equitable power to enforce appropriate remedies for the taking of property. Defendants' brief at p.2, Doc. 119 (citing *Fauske v. Dean*, 101 N.W.2d 769, 771 (S.D. 1960); *Olson v. City of Watertown*, 232 N.W. 289, 292-93 (S.D. 1930)). Defendants' argument, however, focuses on the availability but ignores the adequacy of the remedies.

---

[1]DM&E also contends that this case presents a facial attack on the validity of S.D.C.L. § 49-16A-75.3(5), and that litigants are not required to meet the *Williamson* ripeness requirements when they are solely mounting a pre-enforcement facial challenge under the Fifth Amendment. DM&E relies on *Yee v. City of Escondido*, 503 U.S. 519 (1992)(petitioners allege that ordinance does not substantially advance a legitimate state interest), as support for its argument. The United States Supreme Court has explained that litigants face an "uphill battle" in presenting facial challenges to legislative enactments because of the difficulty in demonstrating that the mere enactment of legislation deprives the owner of property of an economically viable use of his property. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997)(citing *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 297 (1981)). The Eighth Circuit in its opinion in this case discussed how S.D.C.L. § 49-16A-75.3(5) may not necessarily mandate a taking of railroad property. 362 F.3d at 520-521. Given the present posture of this case, this Court need not decide the facial challenge claim by DM&E.

6

The South Dakota Supreme Court has repeatedly stated that it assumes "statutes mean what they say and that legislators have said what they meant." The South Dakota Supreme Court has explained that when statutory language is "clear certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute." *See Gloe v. Union Ins. Co.*, 694 N.W.2d 252, 260 (S.D. 2005); *Cutler-Christians v. Christians*, 633 N.W.2d 176, 178 (S.D. 2001); *Hagemann ex rel. Estate of Hagemann v. NJS Engineering, Inc.*, 632 N.W.2d 840, 843 (S.D. 2001); *Nickerson v. American States Ins.*, 616 N.W.2d 468, 470 (S.D. 2000); *Mathis v. Mathis*, 609 N.W.2d 773, 778 (S.D. 2000); *South Dakota Subsequent Injury Fund v. Federated Mut. Ins., Inc.*, 605 N.W.2d 166, 169 (S.D. 2000). It is also well recognized that a statute with more specific language relating to a particular subject will prevail over the general terms of other authority. *See Pourier v. South Dakota Dept. of Revenue*, 674 N.W.2d 314 (S.D. 2004); *Martinmaas v. Engelmann*, 612 N.W.2d 600, 611 (S.D. 2000).

The terms of S.D.C.L. § 49-16A-75.3(5) in its current form until July 1, 2006, require a railroad's exercise of the right of eminent domain to be dependent on the railroad providing electric utilities, public utilities, telecommunication companies, and rural water systems with the use of the right-of-way for the placement of underground facilities "without fee." The terms of this statute are unambiguous and specific. Considering the clear language of S.D.C.L. § 49-16A-75.3(5), the absence of any statutory exceptions to this statute, and well recognized principles of statutory construction, it is clear that DM&E would not be compensated for any easements that would be allowed for free to the recipient under S.D.C.L. § 49-16A-75.3(5) in its current form until July 1, 2006. State court remedies which would normally allow for just compensation in other takings cases simply fail to allow for compensation of any kind in the context of S.D.C.L. § 49-16A-75.3(5). In this case, this Court acknowledges and would apply the futility or inadequacy exception to the ripeness rule set forth in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), in the event that Senate Bill 157 would not take effect on July 1, 2006. Accordingly,

IT IS ORDERED:

> (1) that the Plaintiffs would be entitled to having Defendants permanently enjoined from enforcing S.D.C.L. § 49-16A-75.3(5) in the event that Senate Bill 157 would not take effect on July 1, 2006; and

7

(2) that application of S.D.C.L. § 49-16A-75.3(5) in its current form is enjoined until July 1, 2006. If S.D.C.L. § 49-16A-75.3(5) as altered by the 2006 South Dakota State Legislature goes into effect on July 1, 2006, then this proceedings is moot and an appropriate Motion and Judgment should then be submitted to this Court.

Dated this 28th day of March, 2006.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk

By /s/ Jackie Meisenheimer
(SEAL)  DEPUTY

8